**BETHLEHEM STEEL CORPORATION,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (MAR-TINEZ), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 18, 2002.

Decided March 12, 2002.

Barbara L. Hollenbach, Allentown, for petitioner.

I. Michael Luber, Philadelphia, for respondent.

Before COLINS, President Judge, COHN, Judge and MIRARCHI, Jr., Senior Judge.

OPINION BY President Judge COLINS.

Bethlehem Steel Corporation (Employer) petitions for review of the Workers' Compensation Appeal Board (Board) order affirming an award of benefits to Alfonso Martinez on his claim petition in which he alleged a work-related loss of hearing in both ears.

Martinez worked for Bethlehem Steel from 1964 to 1992, and during that time he was exposed to loud and continuous noise. On or about June 23, 1995, Martinez filed a claim petition alleging that his last date of employment and/or exposure was November 30, 1992 and that notice of his injury was served on the Employer by the filing of the claim petition. At a March 1997 hearing before the workers' compensation judge, Martinez testified about his various jobs with the Employer and his exposure to noise. He stated that in 1992 before he retired, he had his hearing tested at the union hall. He stated that he never received a copy of the test results and was never told that he had sufficient hearing loss to qualify for benefits, but he subsequently contacted counsel, who told him he had cause to file a claim. (Notes of Testimony, pp. 21–22.) At the time of the March 1997 hearing, counsel for the Employer made an oral motion to dismiss on the ground that the case had been filed for over a year without an opinion from a medical expert to establish the compensability of Martinez's injury.

In support of his claim, Martinez produced the deposition testimony of Dr. Bruce M. Greenspan, board-certified in otolaryngology, who examined Martinez and conducted tests in April 1997. On the basis of an audiogram he performed on Martinez on April 4, 1997 and examination of earlier audiograms, Dr. Greenspan testified that pursuant to the AMA guidelines, Martinez suffered a 34 percent hearing loss attributable to occupational noise exposure. The Employer presented the deposition testimony of Dr. Craig Haytmanek, who examined Martinez at the Employer's request. Based on a 1992 audiogram taken when Martinez was still working, Dr. Haytmanek opined that Martinez had a 17.2 percent binaural hearing loss. Eliminating non-work-related causes and hearing loss attributable to age, Dr. Haytmanek attributed a 7.8 percent binaural hearing loss to work-related causes. Crediting the testimony of both medical experts in part, the judge found that Martinez suffered a compensable hearing loss of 17.2 percent.

The Employer appealed, challenging the judge's findings and conclusions as to the percentage of hearing loss and raising the judge's failure to address the timeliness of notice to the Employer. After concluding that the judge's finding of a 17.2 percent hearing loss was inconsistent with the evidence, the Board reversed and remanded for findings and conclusions on the extent

of Martinez's hearing loss consistent with the evidence and also instructed the judge to address the Employer's contention, raised in its answer to the claim petition, that it did not receive timely notification of Martinez's injury.

On remand, without taking additional evidence,[1] the judge made the following findings with respect to notice:

5. During the Claimant's employment the employer took serial audiograms which demonstrate a progressive loss of hearing. Although the employer was aware of the Claimant's loss of hearing and had reason to be aware of its cause, the Claimant was not notified by the employer of his specific audiogram results or of the reason for his hearing loss.

6. The Claimant was not notified by competent medical authority that he had a compensable noise related hearing loss until he was so advised by Dr. Bruce Greenspan subsequent to the April 4, 1997 examination.

7. Although as a practical matter the employer had actual notice of the Claimant's hearing loss by virtue of its own hearing testing program, the employer was not formally notified of the Claimant's loss until the filing of the instant petition on June 26, 1995.

(Remand Findings of Fact Nos. 5–7.) The judge credited Dr. Greenspan's testimony in its entirety and rejected the opinions of Dr. Haytmanek. Based on Dr. Greenspan's testimony, the judge concluded that Martinez had established a compensable hearing loss of 34 percent. The Board affirmed.

Before Commonwealth Court, the Employer raises the following errors: 1) the judge's original credibility determination with respect to Dr. Greenspan's testimony was not appealed and therefore not subject to reconsideration on remand; 2) the audiogram on which Dr. Greenspan based his medical opinion did not conform to OSHA standards and therefore the audiogram and the medical opinion were legally insufficient to support an award of benefits; 3) the judge's determination of timely notice to the Employer is not supported by the evidence, or in the alternative, interest on the award of benefits should be calculated as of April 1997 and not the date the claim petition was filed.

 In workers' compensation cases, our review is limited to determining whether necessary findings of fact are supported by substantial evidence and whether constitutional rights have been violated or errors of law have been committed. 2 Pa.C.S. § 704. Our function is not to reweigh evidence or to substitute our judgment for the judgment of the judge. *Vitelli v. Workmen's Compensation Appeal Board (St. Johnsbury Trucking Company)*, 157 Pa.Cmwlth.589, 630 A.2d 923 (1993), *petition for allowance of appeal denied*, 537 Pa. 627, 641 A.2d 591 (1994). If the credited evidence constitutes substantial evidence, the judge's findings will not be disturbed even though there may be evidence to the contrary. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board*, 31 Pa. Cmwlth. 590, 377 A.2d 1007 (1977).

We begin by addressing the Employer's contention that the evidence does not support the judge's determination of timely notice of injury. The Employer argues that the 120 day notice period began to run in 1992, when Martinez was advised by a physician that his hearing loss was work-

---

1. The judge noted that the parties were given the opportunity to submit additional evidence and argument; the parties responded by filing additional briefs. (Judge's Remand Decision, p. 2.)

related and advised by his attorney that he had a compensable claim. Martinez argues that the notice period did not begin to run until April of 1997, when Dr. Greenspan advised him that he had a work-related, 34–percent binaural hearing loss.

 The claimant bears the burden of proving that the employer was given notice of the injury. *Kocher's IGA v. Workers' Compensation Appeal Board (Dietrich)*, 729 A.2d 145 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 561 Pa. 680, 749 A.2d 473 (2000). Whether a claimant has complied with the Act's notice requirements is a question of fact to be determined by the fact finder. *Socha v. Workers' Compensation Appeal Board (Bell Atlantic–Pa., Inc.)*, 566 Pa. 602, 783 A.2d 288 (2001).

 Section 311 of the Workers' Compensation Act (Act)[2] provides,

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, ... shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury ... in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.

A claimant's belief or suspicion that he has suffered a significant hearing loss and that it is work related is alone insufficient to confer knowledge under Section 311 of the Act to begin the running of the statutory notice period. *Boeing Helicopter Company v. Workmen's Compensation Appeal Board (McCanney)*, 157 Pa.Cmwlth.76, 629 A.2d 184 (1993), *petition for allowance of appeal denied*, 539 Pa. 321, 652 A.2d 796 (1994). Although the applicability of this discovery rule has recently been supplanted in cases where the claimant still works for the employer, this discovery principle remains viable in partial hearing loss cases such as the present case, in which the claimant has been free, for a period of longer than 120 days, from exposure to hazardous occupational noise in the employ of the employer against whom compensation is sought. *Socha*, 566 Pa. at 610–11, n. 8, 783 A.2d at 293.

The present case is factually similar to *Hermanson v. Workmen's Compensation Appeal Board (Kaiser Aluminum)*, 156 Pa.Cmwlth.556, 628 A.2d 514 (1993), *petition for allowance of appeal denied*, 536 Pa. 633, 637 A.2d 293 (1993), in which the claimant alleged that he was unaware of the compensability of his claim until advised by the physician to whom he was referred to render an opinion in support of his claim. In dismissing the claim, the judge found that the claimant knew that his hearing loss was compensable based on the fact that he had obtained hearing aids and, more significantly, on the fact that the claimant had met with an attorney and filed his claim petition *before* he received the physician's opinion.

 Having considered all of the evidence on this issue, we must conclude that the judge's findings are not supported by substantial evidence. First, none of the credited evidence supports the judge's finding that the Employer had actual knowledge Martinez's hearing loss in the

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 631.

results of hearing tests performed at Bethlehem Steel in 1964, 1983, and 1992. On remand, the judge credited Dr. Greenspan's testimony in its entirety, and Dr. Greenspan testified that all of the Bethlehem Steel audiograms showed hearing loss, including the 1964 audiogram taken when Martinez began working for the Employer. Dr. Greenspan stated that the Bethlehem Steel audiograms did not provide a basis for determining what percentage of the hearing loss, if any, was sensorineural (i.e., occupationally induced) and that the results of those tests fluctuated. For example, Dr. Greenspan testified that the results of conductive component of Martinez's hearing loss varied from year to year, most probably because of his history of chronic ear infections, as evidenced by the fact that the 1983 audiogram showed more hearing loss than the 1992 audiogram. (Greenspan deposition, pp. 45–46.)

The evidence also does not support the judge's findings that Martinez did not know that he had a compensable claim until he was so advised by Dr. Greenspan in 1997. Martinez testified that before he retired in 1992 he knew he was losing his hearing and obtained a hearing aid. More significant, on direct examination by his own counsel, Martinez stated that he had his hearing tested at Bethlehem Steel in 1992 before he retired and that he met with counsel, who told him that he had cause to file a claim:

Q. Mr. Martinez, when was the first time you became aware that you had a hearing loss sufficient that you could file for workers' compensation benefits?

A. I knew I was losing my hearing aid, or losing my hearing, and that is when I went to get my hearing aid. But before I retired, I seem—well, from hearsay I heard people were coming down to Bethlehem Steel and anybody that had any hearing loss would be tested, and I didn't know anything about it so I went and I—

Q. When you went, did you meet with me?

A. Yes.

Q. Do you remember when that was?

A. That was in 1992 before I retired.

Q. What happened when you came down to the union hall at Bethlehem to get tested? Were you given a test?

A. They tested my ears and everything else.

Q. After that did you have a discussion with me?

A. Yes.

Q. And what did I tell you?

A. You told me that I had cause to file for a claim.

Q. Before that had anybody at Bethlehem Steel ever given you copies of the actual test at Bethlehem Steel?

A. No.

Q. Did they ever tell you that you had a sufficient hearing loss which would enable you to file for benefits?

A. No.

Q. Do you remember the date that you came to see me exactly?

A. Not really.

Q. Approximately?

A. I know it was before I left Bethlehem Steel.

Q. Sometime right before you left Bethlehem Steel?

A. Right. I retired in 1992.

Martinez filed his claim petition on June 23, 1995, and the petition avers that notice of the injury was served on the Employer that same date, by filing of the claim petition. By his own testimony, Martinez knew he had a compensable claim before

he retired in November 1992,[3] and the 120–day notice period expired long before Martinez filed his claim petition. All of the evidence indicates that Martinez knew that he had a compensable claim before he met with Dr. Greenspan in 1995, including the fact that as in *Hermanson,* he filed his claim petition long before he saw Dr. Greenspan.[4]

Because we conclude that the evidence does not support the judge's finding that the Employer had actual notice of Martinez's hearing loss, his finding that Martinez had no knowledge that his hearing loss was compensable until 1995, or his finding that Martinez filed his claim petition within 120 days of the time that the Employer received notice of Martinez's injury, we need not address the other issues raised in the Employer's appeal.

Accordingly, the order of the Board is reversed, and the claim dismissed.

### *ORDER*

AND NOW, this 12th day of March 2002, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed, and the claim dismissed.

---

**3.** Cross-examination testimony reveals that Martinez may have known even earlier that his hearing loss was work related. Martinez acknowledged that his family doctor, Dr. Dale Weisman, told him that his hearing loss was related to his employment, but that he did not report it to anyone at Bethlehem Steel. (Hearing Transcript, p. 37, 40–41.) Dr. Weisman's office notes, Exhibit D–11, show that Martinez treated with Dr. Weisman between 1986 and 1993.

**4.** We note that at the March 12, 1997 hearing, counsel for the Employer objected to the fact that more than a year after the claim was filed, counsel for Martinez had provided no expert report. (3–12–97 Hearing Transcript, pp. 4–7.)